*213 OPINION.
MaRQtjjette :
The record in this appeal presents for our determination the single question of whether or not the petitioner was during the year 1922 exempt from taxation under section 231 of the Kevenue Act of 1921, which provides in part:
That the following organizations shall be exempt from taxation under this title—
*******
(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual.
It is agreed by the parties hereto that if the petitioner is exempt from taxation under the provision of law just quoted there is no deficiency, and that if it is not exempt the deficiency determined by the Commissioner should be approved.
Upon consideration of the evidence herein we are of the opinion that the petitioner is a corporation organized and operated exclusively for charitable purposes; that no part of its net earnings inures to the benefit of any private stockholder or individual; and that it is entitled to the exemption claimed. It was organized, as its articles of incorporation show, for the purpose of establishing and maintaining a home and school for the benefit of poor white children and poor, old and infirm white persons, and it is and has been since its organization operated for that purpose. It has no stockholders who could benefit from its earnings, its affairs being operated and maintained by five trustees who receive and can receive only the nominal compensation provided for them by the articles of incorporation; and no part of its net earnings inures or can inure under the articles of incorporation to any private individual other than the persons and classes who are designated as the objects of its charitable activities. The respondent admits that the petitioner is a charitable institution but contends that it is not operated exclusively for chari *214 table purposes, since it owns and operates a number of business enterprises which produce income more than sufficient for carrying out its charitable activities and which are in direct competition with individuals and noneleemosynary corporations. This contention presents no difficulties here. It is true that the petitioner owns a large amount of property and a number of business enterprises which are producing- and in the past have produced income in excess of the amounts required to maintain the Home and the other charitable activities in which the petitioner is engaged. These income-producing enterprises are provided for by the petitioner’s articles of incorporation which recite that as—
* * * incident and auxiliary to said trust and in order that sufficient funds may be obtained to carry out the charities herein set forth * * * [and] * * * particularly that said corporation and its holdings may be so managed that it shall forever be self supporting, the monies, interest in profits so obtained to be used only in such manner as shall be most conducive to the proper carrying out of the charitable and benevolent purposes herein stated.
However, the fact that the petitioner owns property which produces income in excess of its immediate needs does not alter or change its character or make it any the less a corporation organized and operated for charitable purposes. If an organization designed and established to dispense charity on a large scale is to be effective, it can not itself be entirely and continually dependent on the charitable whims of individuals and be compelled to seek funds for its activities by constant appeals to those persons of means who may be charitably inclined. It is proper that these organized charities should have large permanent endowments in order to provide revenue sufficient to supply the immediate needs of their charitable activities and to enable them to enlarge and expand those activities as occasion may require. This petitioner is in a fortunate position among corporations of its kind. It has happened that the property turned over to it by its founder has proved to be extremely valuable and has produced income not only sufficient to take care of the immediate needs of its charitable enterprises but also to increase its permanent endowment. This income not only enables it to dispense charity on a large' scale but makes it potentially a dispenser of charity on a still larger scale as the objects of its bounty may increase in number. In this way it serves and can continue to serve the public by caring for destitute and infirm persons who might otherwise become public charges.
The question here presented is not a new one. In the case of Trinidad v. Sagrada Orden de Predicadores, 263 U. S. 578, the Supreme Court of the United States had before it a situation which is practically, identical with the situation involved herein. In that case Sagrada Orden de Predicadores was a corporation organized *215 and operated under the laws of the Philippine Islands for religious, benevolent, scientific and educational purposes. It had large properties in the Philippines consisting of real estate, stocks in private corporations, and money loaned at interest, all of which were held and used as sources from which to obtain funds or revenue for carrying on its religious, charitable and educational work. The bulk of its income consisted of rents, dividends and interest derived from these properties. A tax was levied on the corporation’s net income for the year 1913 under the authority of the Revenue Act of 1913. That Act contained, as does the Revenue Act of 1921, a provision exempting from taxation any corporation “ organized and operated exclusively for religious, charitable, scientific or educational purposes, no part of the net income of which inures to the benefit of any private stockholder or individual.” The corporation paid the tax under protest and brought suit to recover the amount so paid. The Government conceded that the corporation was organized and operated for religious,'charitable and educational purposes and that no part of its net income inured to the benefit of any stockholder or individual, but contended that it was not operated exclusively for those purposes and was not therefore within the exception in the taxing act. The Supreme Court of the United States, holding that the corporation was exempt from taxation under the Revenue Act of 19.13, said :
Whether the contention is well taken turns primarily on the meaning of the excepting clause, before quoted from the taxing act. Two matters apparent on the face of the clause go far towards settling its meaning. Eirst, it recognizes that a corporation may be organized and operated exclusively for religious, charitable, scientific or educational purposes, and yet have a net income. Next, it says nothing about the source of the income, but makes the destination the ultimate test of exemption.
Evidently the exemption is made in recognition of the benefit which the public derives from corporate activities of the classes named, and is intended to aid them when not conducted for private gain. Such activities cannot be carried on without money; and it is common knowledge that they are largely carried on with income received from properties dedicated to their pursuit. This is particularly true of many charitable, scientific, and educational corporations and is measurably true of some religious corporations. Making such properties productive to the end that the income may be thus used does not alter or enlarge the purposes for which the corporation is created and conducted.
* # * * sit * *
* * * In using the properties to produce the income it therefore is adhering to and advancing those purposes, and not stepping aside from them or engaging in a business pursuit.
In the Appeal of Unity School of Christianity, 4 B. T. A. 61, this Board held that a corporation otherwise exempt from tax is not deprived of exemption because it carries on profitable or competitive *216 activities in furtherance of its predominant religious, charitable, scientific or educational purpose. In that appeal the Board said:
The argument of the Commissioner here is similar in effect although substantially different in its emphasis. It is said that the several departments of the corporation, such as the inn and the publications, are conducted in competition with purely commercial ventures, so that every meal served at the inn takes so much from a competing restaurant and that each book sold deprives another publisher of a similar sale. This, it is said, deprives the corporation of an exclusively religious, charitable or educational character. As the basis for this contention it is apparent that the Commissioner relies upon the incidental statement by the court in the Trimdad case that “ it is not claimed that there is any selling to the public or in competition with others.”
For the purpose and operations of this corporation we must look to the evidence, and it is manifest that the entire reason for its existence is an altruistic purpose to promote a religion and the spiritual welfare of mankind. If for some unforeseen reason the corporation were no longer permitted or enabled to fulfill this purpose, it would have no cause to continue in existence. Religion and education dominate its activities and all else is' incidental to this end.
Can it then be said that the financial aspects of the conduct pf the inn or of the farm or of the publication of the books and periodicals are such as to make the statutory word “ exclusively ” inapplicable? We think not. There is nothing in the statute which justifies the Government’s emphasis upon the competitive aspect of its selling. The inquiry must always be whether all of the activities of the organization in question are devoted to furthering its predominant religious, charitable, scientific or educational purpose — are all of its activities designed and carried on to advance religion, charity, science or education? If these purposes or any of them are the controlling reasons for the corporation’s existence and all things are devoted by it to that end, the congressional purpose of exemption, “made in recognition of the benefit which the public derives,” should not be defeated because its incidental features are to some extent profitable. It is only when such profits or net income are used for private rather than public benefit that Congress has taxed them.
The respondent in support of his contention has cited a number of cases from State courts relative to the exemption from direct property taxes of certain property owned by religious, charitable or educational institutions under State constitutions or laws providing that property used exclusively for educational, religious or charitable purposes shall be exempt. The decisions in those cases uniformly hold that under these constitutional or legal provisions the property itself must be directly devoted to educational, religious or charitable purposes in order to be exempt from the tax. For example, under these provisions a building owned by a religious organization and used as a church is exempt, but a building owned by the same organization used for commercial purposes is not. However, in our opinion these cases are not in point here. As stated by the Supreme Court of the United States in the case of Trinidad v. Sagrada Orden de *217 Predicadores, sufra, the test here is not the source of the income but its ultimate destination. It is not difficult to conceive that property owned by religious, charitable or educational institutions may be subject to a direct property tax levied by a State or a subdivision thereof, while the income from that property may be exempt from taxation under the revenue laws of the United States.
We conclude that the petitioner is a corporation such as is contemplated by section 231(6) of the Revenue Act of 1921 and that its income for the year 1922 is not subject to tax.

Judgment will be entered for the fetitioner.

MoRRis not participating.